**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JEREMY CABLE,<br>            Appellant, | DOCKET NUMBER<br>SF-844E-19-0033-I-1 |
| v. | |
| OFFICE OF PERSONNEL<br>    MANAGEMENT,<br>            Agency. | DATE: May 23, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Steven E. Brown, Esquire, Westlake Village, California, for the appellant.

Albert Pete Alston, Jr., Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) that denied his application for disability retirement benefits under the Federal Employees' Retirement System (FERS). Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was employed by the National Aeronautics and Space Administration. Initial Appeal File (IAF), Tab 9 at 64. On March 14, 2017, he filed an application for disability retirement benefits under FERS, asserting that he had asthma, chronic sinus infections, sinusitis, allergic rhinitis, and "[e]rythematons conjuctira."[2] *Id*. at 72-74. He alleged that his medical conditions made it "nearly impossible" to perform his assigned duties and made it difficult for him to attend work daily. *Id*. at 73. The appellant resigned, effective May 12, 2017, due to health reasons. *Id*. at 4.

OPM issued an initial decision denying the appellant's application for disability retirement because he did not have a service deficiency due to his medical conditions. *Id*. at 48-52. After the appellant requested reconsideration,

---

[2] Sinusitis is an inflammation or swelling of the tissue lining the sinuses. https://www.webmd.com/allergies/sinusitis-and-sinus-infection (last visited May 22, 2024). Rhinitis is when a reaction occurs that causes nasal congestion, runny nose, sneezing, and itching. https://www.hopkinsmedicine.org/health/conditions-and-diseases/rhinitis (last visited May 22, 2024). No information could be found regarding "[e]rythematons conjuctira." However, OPM noted in its reconsideration decision that the appellant's primary care physician documented "erythematous conjunctiva" on occasion, but it was not supported as a disabling medical condition. IAF, Tab 9 at 8.

OPM issued a September 25, 2018 reconsideration decision, which concluded that the initial decision was correct. *Id*. at 5-9.

The appellant filed this appeal with the Board. IAF, Tab 1. The administrative judge held a telephonic hearing. IAF, Tab 20, Hearing Compact Disc (HCD). The administrative judge found that the appellant failed to prove that he became disabled because of his medical conditions; she noted that his conditions did not result in a deficiency in performance, conduct, or attendance, nor were they incompatible with useful and efficient service or retention in his former position. IAF, Tab 21, Initial Decision (ID) at 7-14. Specifically, she found that the only deficiencies he identified occurred in his attendance, and she held that attendance problems alone do not establish entitlement to disability retirement under FERS without some corroborating evidence showing impaired performance of duties. ID at 11-12. She further found that his medical documentation did not show that he was restricted from performing the essential functions of his position or that his medical conditions were incompatible with useful and efficient service. ID at 12-13. She therefore affirmed OPM's reconsideration decision. ID at 14.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. In it, he argues, among other things, that the administrative judge misinterpreted evidence, improperly credited the testimony of the Equal Employment Opportunity (EEO) Specialist on medical issues, did not factor in the effect of his absences on his performance, ignored the agency's failure to replace the "old, moldy/mildewed" carpet, and ignored the significance of his environmental limitations. *Id*. at 7-9. He also asserts that most of his evidence focused on inability to render useful and efficient service. *Id*. at 8. The appellant further argues that the administrative judge wrongly concluded that his ability to perform some of his duties disqualified him from disability retirement, and his environmental work limitations can constitute a disability. *Id*. at 9-12. OPM has not filed a response.

## DISCUSSION OF ARGUMENTS ON REVIEW

In an appeal from an OPM decision denying a voluntary disability retirement application, the appellant bears the burden of proof by preponderant evidence.[3] *Christopherson v. Office of Personnel Management*, 119 M.S.P.R. 635, ¶ 6 (2013). To be eligible for a disability retirement annuity under FERS, an employee must show the following: (1) he completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, he became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least 1 year from the date that the application for disability retirement benefits was filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) he did not decline a reasonable offer of reassignment to a vacant position. *Id*.; *see* 5 U.S.C. § 8451(a).

The administrative judge properly found that criteria (1) and (5) were satisfied. ID at 6; IAF, Tab 9 at 62-64, 67. The administrative judge also correctly found that the appellant's medical conditions were expected to continue for at least 1 year from the date that the disability retirement application was filed. ID at 6. The appellant filed his disability retirement application on March 14, 2017. IAF, Tab 9 at 78. The appellant's medical records show that, on April 9, 2018, he continued to see his physician about, among other things, "an ongoing cough" and "shortness of breath." IAF, Tab 10 at 10. In a May 4, 2018 letter, the appellant's doctor stated that he saw the appellant regularly for "mixed obstructive and restrictive ventilatory defect, asthmatic bronchitis and persistent

---

[3] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

ethmoid sinusitis."[4]  *Id*. at 9.  During his testimony, given on February 20, 2019, the appellant stated that he still had some of the same symptoms, but they were not as severe.  HCD, Track 1 at 1:07:15 (testimony of the appellant).  We affirm the administrative judge's finding that the appellant proved criterion (3).

The administrative judge noted that this appeal hinged on whether the appellant satisfied the second criterion for establishing a right to disability retirement benefits.  ID at 7.  Although the administrative judge should have addressed the fourth criterion – whether accommodation of the disabling medical condition in the appellant's position was unreasonable – her adjudicatory error is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the initial decision.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).  For the following reasons, we affirm the initial decision.

The appellant failed to prove criterion (2).

An appellant may meet the statutory requirement that he "be unable, because of disease or injury, to render useful and efficient service" in his position by (a) showing that the medical condition caused a deficiency in performance, attendance, or conduct, as evidenced by the effect of his medical condition on his ability to perform specific work requirements, or his medical condition prevented him from being regular in attendance, or caused him to act inappropriately, or (b) showing that the medical condition is incompatible with useful and efficient service or retention in the position by demonstrating that his medical condition is inconsistent with working in general, in a particular line of work, or in a particular type of work setting.  *Christopherson*, 119 M.S.P.R. 635, ¶ 6.  The

---

[4] People with obstructive lung disease have shortness of breath due to difficulty exhaling all the air from the lungs, while people with restrictive lung disease cannot fully fill their lungs with air.  https://www.webmd.com/lung/obstructive-and-restrictive-lung-disease (last visited May 22, 2024).  Ethmoid sinuses refer to the sinuses located between the nose and eyes.  https://www.healthline.com/human-body-maps/ethmoid-sinus#1 (last visited May 22, 2024).

Board considers all pertinent evidence including objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and all evidence showing the effect of his condition on his ability to perform the duties of his position. *Smith v. Office of Personnel Management*, 100 M.S.P.R. 500, ¶ 5 (2005).

On review, the appellant suggests that he had attendance and performance deficiencies and, in the alternative, that he was unable to render useful and efficient service in his position. As previously stated, the record reflects that the appellant asserted in his disability retirement application that he had numerous medical conditions during the relevant time frame. IAF, Tab 9 at 72-73. OPM also considered in its reconsideration decision additional conditions such as dyspnea, reactive airway disease,[5] mixed obstructive and restrictive ventilatory defect, asthmatic bronchitis, and persistent ethmoid sinusitis, among other conditions. *Id.* at 5-9.

The appellant stated that shortly after he began working in the Range Control Office (RCO),[6] he developed such problems as difficulty breathing, issues with his sinuses, watery eyes, and headaches. *Id.* at 30, 42; HCD, Track 1 at 0:04:30 (testimony of the appellant). The appellant's wife stated that she observed the appellant on a daily basis with sinus problems, bloodshot eyes, and a raspy and scratchy voice, and his symptoms worsened as the work week progressed. IAF, Tab 9 at 45; HCD, Track 2 at 0:37:15 (testimony of the appellant's wife). The appellant's supervisor testified that he observed the appellant with watery eyes. HCD, Track 2 at 1:22:30 (testimony of the supervisor). One of the appellant's coworkers confirmed that he observed the

[5] Reactive airway disease is a term that healthcare providers use to describe breathing symptoms that are similar to asthma, but they're not sure of the exact cause. https://my.clevelandclinic.org/health/diseases/24661-reactive-airway-disease (last visited May 22, 2024).

[6] The administrative judge found that the appellant was assigned the position of Range Control Specialist on December 13, 2015. ID at 2. The appellant does not challenge this finding on review. PFR File, Tab 1 at 5.

appellant with increased nasal-related allergies.  IAF, Tab 9 at 47; HCD, Track 2 at 0:09:00, 0:13:00 (testimony of the coworker).

The record included numerous reports from the appellant's medical providers regarding the appellant's visits between April 2016 and July 2018. *E.g.*, IAF, Tab 10 at 5-61.  These reports generally indicate that the appellant complained about breathing and sinus problems, although the handwriting in several of these reports is illegible.

According to the appellant's position description, as a GS-12 Range Control Specialist, some of his duties included analyzing organizational priorities, developing and implementing administrative policies and procedures, attending informative meetings to remain current on systems capabilities and configurations, and insuring efficient and timely support of flight research projects.  IAF, Tab 9 at 91-92.  Among other things, the appellant's position required knowledge and skill in applying analytical and evaluative methods and techniques to issues or studies concerning the efficiency and effectiveness of program operations, and interpersonal skills in presenting staffing recommendations and negotiating solutions to disputed recommendations.  *Id*. at 93.  The appellant and OPM stipulated that his position required memory and concentration.  IAF, Tab 13 at 6, Tab 14 at 5.

The appellant testified that his symptoms interfered with his ability to do his job because his job required concentration, his headaches made it difficult to think, he was short of breath, and he was always so focused on his symptoms that it was difficult to accomplish his duties.  HCD, Track 1 at 0:50:00 (testimony of the appellant).  In an unsworn statement, the appellant wrote that he suffered from "memory and concentration" problems as a result of his medical conditions, and "frequently made mistakes" in the scheduling system, resulting in a reprimand from his lead and trainer.  IAF, Tab 9 at 21.  More specifically, he stated that he had "a difficult time memorizing and recalling" what steps he needed to take to schedule a mission.  *Id*.  The appellant added that he had difficulty overseeing a

mission in the control room because the mission required high concentration. *Id*. He further stated that he had to use allergy eye drops in order to see what he was doing in the control room because his eyes would become watery and itchy. *Id*. The appellant also stated that he was "late to work or meetings on a regular basis, due to being so tired and lethargic from the allergic reactions." *Id*. at 22.

The appellant's statements about deficiencies in his performance are largely contradicted by the record. For the rating period of May 1, 2015, to April 30, 2016, the appellant's overall performance was rated as "Level 4"/"Accomplished," which was the second highest performance rating. *Id.* at 95. The appellant was rated Level 5, Substantially Exceeds Expectations—the highest performance rating—in the critical elements of teamwork and communication. *Id*. at 100-03. In the supporting narrative for the rating, the appellant's supervisor mentioned no deficiencies at all in the appellant's performance, and instead only had positive things to say about him. *Id*. at 104-05. The supervisor testified that up until the appellant's separation, the appellant's performance was acceptable and he had no issues with it. HCD, Track 2 at 1:22:00 (testimony of the supervisor).

Moreover, the appellant's coworker—who was the appellant's witness— testified that he never observed a deficiency in the appellant's work performance due to his symptoms. HCD, Track 2 at 0:17:15 (testimony of the coworker). Although the appellant refers to the coworker's September 2016 letter for support, PFR File, Tab 1 at 7 (citing IAF, Tab 9 at 24), the only support that that unsworn statement provides is that the appellant's reaction to the work environment "is impacting his overall health and hindering his full potential." To the extent the coworker's statements are inconsistent, live testimony is generally entitled to more weight than unsworn statements. *Dubiel v. U.S. Postal Service*, 54 M.S.P.R. 428, 432 (1992); *Jefferson v. Defense Logistics Agency*, 22 M.S.P.R. 10, 13 (1984).

The appellant also argues on review that his absences due to illness prove his disability.  PFR File, Tab 1 at 10-11 (citing *Arnone v. Office of Personnel Management*, 7 M.S.P.R. 212 (1981)).  In *Arnone*, 7 M.S.P.R. at 214-15, the Board found that the evidence established that the appellant suffered from chemical poisoning through her laboratory work, her numerous absences were due to illness, she was prevented her from performing the duties of her job, she was totally disabled for useful and efficient service in her position, and she was entitled to a disability retirement annuity.  There, the appellant presented persuasive evidence from a doctor who specializes in the toxic effect of chemicals on the body and wrote multiple letters of support to show residual neurological damage without any treatment for this poisoning.  *Id*.  This case is distinguishable from *Arnone* because there is no medical evidence that the work environment caused the appellant's medical conditions, and by extension, his absences.

The appellant submitted a chart purporting to show his leave usage from April 19, 2015, through May 27, 2017.  IAF, Tab 13 at 13-23.  By the appellant's calculations, he used 1012 hours of leave during this time due to his respiratory symptoms.  *Id*. at 6.  The appellant testified that he missed work because of his symptoms, to recover from his symptoms, and for medical appointments.  HCD, Track 1 at 1:14:45 (testimony of the appellant).  However, absence from work alone does not establish entitlement to disability retirement without some corroborating evidence establishing impaired performance of duties.  *Harris v. Office of Personnel Management*, 110 M.S.P.R. 249, ¶ 17 (2008).  The agency acknowledged in the Supervisor's Statement that the appellant's attendance became unacceptable on May 1, 2017, IAF, Tab 9 at 69, a mere 11 days before his resignation.  The agency also stated that his absences required his coworkers to "take up the work" that he was unable to do, which "put[] a strain on the office."  *Id*.  The agency's single sentence, written about the 11 days between when his absences became unacceptable and the date of his resignation, does not warrant a finding that his performance was impaired.  To the contrary,

the agency indicated in the Supervisor's Statement that the appellant's performance was not less than fully successful in any critical element. *Id.* at 68.

An employee's subjective evidence of disability is entitled to consideration and weight in a disability retirement case when it is supported by competent medical evidence. *Christopherson*, 119 M.S.P.R. 635, ¶ 13. There appears to be no dispute that the appellant suffered from numerous medical conditions during the relevant time frame. However, medical evidence does not show – let alone prove by preponderant evidence – that any of his conditions were disabling. Therefore, the appellant's subjective evidence of disability is only entitled to limited weight.

Finally, we recognize that the Board has held that an employee can satisfy his burden to show that he was unable to render useful and efficient service by showing that the medical condition(s) is/are inconsistent with working in general, in a particular line of work, or in a particular type of work setting. *Id.*, ¶ 6. However, the appellant has not made such a showing.

We have considered the appellant's remaining arguments on review, but none warrant a different outcome. Regarding the appellant's argument that the administrative judge ignored his environmental limitations and the fact that his doctors imposed permanent work restrictions against him working in moldy or damp environments, PFR File, Tab 1 at 7, we are not persuaded that a different outcome is warranted. The May 4, 2018 letter from his doctor to which he cites on review did not mention any work restrictions being placed on him, but merely identified some of the medical conditions for which he was seen and stated that "[h]e has been noted to have increased symptoms when exposed to molds and [a] moist damp environment." IAF, Tab 10 at 9. Accordingly, the cited evidence does not support the appellant's assertion.

The appellant similarly asserts that medical records confirmed that his symptoms got worse the more he worked at the RCO and were both "uncontrollable" and due to the "moldy carpet." PFR File, Tab 1 at 7 (citing IAF,

Tab 10 at 34, 55, 59, 61). What we could read of this documentation appears to be what the appellant reported to his doctors, not the diagnoses or remedies recommended by his doctors. Additionally, the appellant does not challenge the administrative judge's finding that an allergen report, dated September 22, 2016, indicated absent/undetectable levels of allergen reaction including mold grouping. ID at 13 (citing IAF, Tab 10 at 44-45). Indeed, when asked about the fact that this allergen report came back normal, he simply acknowledged that the report was dated during the same time that he was experiencing symptoms in the office. HCD, Track 1 at 1:06:00 (testimony of the appellant). Nor did the appellant dispute, as his supervisor testified, that the agency conducted an environmental test of his work environment on April 29, 2016, that also found nothing of significance. HCD, Track 2 at 1:39:00 (testimony of the supervisor).

Based on our review of the record and the appellant's arguments on review, we conclude that there was no performance or attendance deficiency or that he was precluded from providing useful and efficient service. *See Boss v. Office of Personnel Management*, 23 M.S.P.R. 234, 238 (1984) (finding that the appellant suffered from headaches as a result of work-related stress, but that there was insufficient evidence that he was unable to perform useful and efficient service because of his headaches); *cf. Cole v. Office of Personnel Management*, 88 M.S.P.R. 54, ¶¶ 4-9 (2001) (finding that the appellant proved through her own testimony and competent medical evidence that her migraine headaches were precipitated and aggravated by her work environment, prevented her from performing useful and efficient service in her position, and caused her deficiency in attendance). Accordingly, we affirm the administrative judge's finding that the appellant did not prove criterion (2), and we affirm OPM's reconsideration decision that denied his application for disability retirement.

In light of our finding that the appellant did not prove criterion (2), we need not address the administrative judge's failure to address criterion (4) or any arguments made by the appellant on review that may relate to criterion (4).

<u>We discern no error with the administrative judge's decision to permit the EEO Specialist to testify.</u>

Below, the appellant objected to the administrative judge's decision to permit the EEO Specialist to testify about "whether there were any medical restrictions which kept the appellant from performing critical duties or from attending work altogether" on the following grounds: (1) relevance; (2) calling for speculation; (3) expert testimony being adduced from an unqualified lay witness; (4) beyond the competence of the witness to testify on medical issues; (5) contrary to a stipulation of record; and (6) unduly prejudicial to the appellant. IAF, Tab 14 at 5, Tab 18 at 3, Tab 19 at 4-5. He continues to object to her testimony on review, adding that her testimony that no reasonable accommodation was necessary is a mixed question of law and medicine about which she was not qualified to testify. PFR File, Tab 1 at 8.

It is well established that administrative judges have broad discretion to regulate the proceedings before them. *Oulianova v. Pension Benefit Guaranty Corporation*, 120 M.S.P.R. 22, ¶ 12 (2013). At the hearing, the EEO Specialist did not attempt to diagnose the appellant or otherwise testify improperly about his medical conditions. HCD, Track 2 (testimony of the EEO Specialist). She instead only testified about her knowledge of the medical restrictions placed on the appellant, his requests for accommodations, and her conversations with him. *Id.* Accordingly, we find that her testimony was relevant, did not call for speculation, was not beyond her knowledge, and she was qualified to give such testimony. We further find that her testimony was not contrary to any of the stipulations. IAF, Tab 13 at 6-7, Tab 14 at 4-5. The appellant has not explained why the EEO Specialist's testimony was unduly prejudicial to him, and we find that his assertion is without merit. Accordingly, we find that the appellant has not shown that the administrative judge erred in allowing the EEO Specialist to testify.

**NOTICE OF APPEAL RIGHTS[7]**

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions to provide a comprehensive summary of <u>all</u> available review options. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.